Regina J. TWARDESKY

v.

Caspar WEINBERGER, Secretary of
the Department of Health,
Education and Welfare.

Civ. A. No. 75–394.

United States District Court,
W. D. Pennsylvania.

Jan. 14, 1976.

Simon B. John, Uniontown, Pa., for plaintiff.

Craig R. McKay, Asst. U. S. Atty., for the Secretary of Health, Education and Welfare.

## MEMORANDUM AND ORDER

WILLSON, Senior District Judge.

This action is pursuant to 42 U.S.C.A. § 405(g), seeking review of a final decision of the Secretary of Health, Education and Welfare, which held that the plaintiff was not entitled to a period of disability or disability insurance benefits under the Social Security Act.

Both parties have filed a motion for summary judgment pursuant to Rule 56. Counsel have been heard in oral argument and briefs have been submitted. The only issue to be decided is whether the decision of the administrative law judge, which became the final decision of the Secretary, was supported by substantial evidence.

Plaintiff filed an application for a period of disability and for disability insurance benefits on October 30, 1973, alleging that she became unable to work on August 3, 1973, at age 47. The application was denied initially and upon reconsideration by the Bureau of Disability Insurance of the Social Security Administration, after the Pennsylvania State Agency, upon evaluation of the evidence by a physician and a disability examiner, had found that plaintiff was not under a disability. The administrative law judge, before whom plaintiff, her attorney and a vocational expert appeared, considered the case de novo, and on October 31, 1974, found that plaintiff was not under a disability. This decision became the final decision of the Secretary when the Appeals Council approved the decision on February 5, 1975.

The basic facts, adduced from the testimony and evidence before the administrative law judge, are not in dispute. Plaintiff was born on February 25, 1926, is unmarried and has an eighth grade education. She presently lives with her sister and brother-in-law next door to her married daughter. Other than part time work as a clerk in a store, plaintiff's sole occupation for thirty years has been as a presser in dry cleaning plants. Her job consisted of operating a pressing machine and other types of irons, carrying bundles of clothing and hanging the pressed clothes on a line.

The records of Uniontown Hospital show plaintiff was admitted for pelvic surgery on January 8, 1973. On January 9, 1973, Dr. James G. Zaidan, a general surgeon who had been plaintiff's personal physician since 1956, performed a repair of a large cystocele, a total abdominal hysterectomy and release of intestinal adhesions. Shortly afterward, plaintiff experienced a left lung atelectasis and was placed in the intensive care unit. Her condition improved and by January 24, 1973, she had recovered sufficiently to be discharged in good condi-

tion. Plaintiff was able to return to work on April 16th and continued to work until August 3rd to have hernia surgery. On August 6, 1973, plaintiff was readmitted for repair of an incisional hernia which had developed in her lower abdomen. Dr. Zaidan operated on August 9th and plaintiff made an uneventful recovery. Chest x-rays showed her lungs were clear of any active disease. Plaintiff was discharged on August 22, 1973, in good condition. She has not returned to work since that time.

Dr. Zaidan reported on November 15, 1973, that plaintiff was improving but unable to work for fear of recurrence of the hernia. He noted that she had a history of Grave's Disease (goiter) which had been treated with radioactive iodine. He considered her a poor risk for further surgery and indicated that heavy lifting, prolonged standing and "practically any kind of job would be detrimental." In a report dated April 6, 1974, Dr. Zaidan related the same general information, but, in addition, stated plaintiff's thyroid condition was under control. In a letter dated August 28, 1974, Dr. Zaidan listed some of plaintiff's medical history and concluded by stating that he felt she would not be a good risk for surgery due to previous complications and he felt she was totally disabled. No objective findings accompanied this opinion. In a similar letter, dated October 8, 1974, Dr. Zaidan again cited some of plaintiff's medical history, adding that she also had a chronic lung condition and chronic cough. He repeated his opinion that plaintiff was completely disabled.

Plaintiff also testified that she gets weak in her knees if she stands too long and experiences pain and numbness in her side if she sits too long. The pain and numbness can be relieved only if she puts ice on it or gets up and moves about. When plaintiff turns to the right she gets a cramp across her chest and back. She also experiences pressure in the back of her head, which is only relieved when she lies down, and her stomach swells every day.

Her daily activities consist of washing the dishes, making her bed, straightening up the bathroom, and folding the laundry. She owns a car but only drives when necessary. She goes shopping with members of her family but carries nothing heavier than a loaf of bread. Plaintiff goes to church about once a month and occasionally babysits for her daughter next door provided that her sister is at home in case she needs assistance with an emergency. Plaintiff sees her physician about every six months but calls him more often if necessary. Plaintiff estimates that she can stand for about an hour and sit for about one-half hour without discomfort.

Noel A. Plummer, Ph. D., a vocational expert, appeared at the hearing by request of the administrative law judge. He was asked if there was any substantial gainful employment in plaintiff's area that she could perform, assuming she could do no heavy lifting or prolonged standing, but could do sedentary work. He testified there were such jobs in the area in substantial numbers and cited such work as painting or applying decals to dinnerware, ticket seller at a movie or parking lot, garment examiner and merchandise marker. He described these jobs as sedentary, permitting alternate sitting and standing. However, Dr. Plummer then testified that assuming plaintiff's entire symptomatology as she described it in her testimony and considering her age, education and work background he believed that she would not be able to engage in any substantial gainful work. He went on to say that the recurrence of her symptomatology and the things that are required for these to be relieved are such that she would not be able to stay at a given job for any considerable length of time. On top of that, the prospective employer, knowing her medical history and prospective operation, would be unlikely to hire her.

Upon viewing the entire record, the Secretary found that the plaintiff's impairments, neither singly nor in combination, are sufficiently severe to render her

disabled within the meaning of the Act. The Secretary further found that plaintiff retained the capacity to engage in lighter, sedentary work suggested by the vocational expert, all of which exist in significant numbers in the region of plaintiff's residence; consequently, plaintiff's claim was denied.

The duty of this Court is to determine whether there was substantial evidence in the record to support the finding of the Secretary that plaintiff retained the residual functional capacity to engage in substantial gainful employment. The test for disability is principally a two-step process: (1) a determination of the extent of the physical or mental impairment and (2) a determination whether that impairment results in an inability to engage in any substantial gainful activity. *Hodson v. Celebrezze*, 312 F.2d 260 (3rd Cir. 1963).

In his decision, the Secretary concedes that plaintiff suffers from an impairment. There is no doubt that plaintiff suffers from some pain and discomfort and that she has certain physical limitations. The Secretary agreed that she is unable to return to her former work in the cleaning plant, which requires a fair amount of strenuous physical exertion. Nevertheless, the Secretary found that with plaintiff's admitted capabilities, together with her physician's advice, seem to point toward sedentary work.

After a careful review of the entire record, this Court is unable to find that the Secretary's decision is supported by substantial evidence. This determination is compelled by a finding that the Secretary improperly evaluated the plaintiff's testimony, gave little or no weight to plaintiff's subjective symptomatology and gave little weight or credence to the uncontradicted reports of the expert witnesses, Dr. Zaidan and Dr. Plummer.

The Secretary found that it was "significant" that plaintiff does operate a car, does light household tasks and "seems to lead a rather active life, according to her own testimony." Plaintiff did testify that she does own a car, but also stated that she does not drive very often and then only when she has to. She does not want to take a risk and get involved in an accident, especially considering her problem turning to her right. The household chores she completes, making her bed, washing the dishes, straightening up the bathroom and folding the laundry, can only be considered very light tasks. None of these tasks require a long period of time to complete and, if she did feel pain or discomfort, she can stop working and perform the chore later. As to an active life, plaintiff testified she cannot walk further than around the house or the length of the street. She does go to church once a month but then she still feels discomfort even though the services only take one half an hour. Miss Twardesky only goes shopping with relatives accompanying her and then only carries a package as light as a loaf of bread. She does not even babysit her grandchildren next door unless her sister is also immediately available.

This Court must agree with plaintiff's contention that the Secretary disregarded or glossed over plaintiff's testimony detailing her symptomatology. In the case of *Brittel v. Richardson*, 441 F.2d 1193, 1195 (3rd Cir. 1971), where the plaintiff had testified to symptoms which were real to her but unaccompanied by objective medical data, the Court said:

> "Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof. . . . Since the Secretary must evaluate the evidence in relation to the particular individual seeking benefits, where there are several illnesses suffered simultaneously by the claimant, the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits."

The Court of Appeals for the Third Circuit reiterated the duty of the Secretary to evaluate the evidence of subjective

symptomatology in *Baerga v. Richardson*, 500 F.2d 309, 312 (1974), wherein the Court stated:

"As fact finder he has the right to reject their testimony entirely, but failure to indicate rejection could lead to a conclusion that he neglected to consider it at all. 'In addition to objective medical facts and expert medical opinions, the Hearing Examiner must consider the claimant's subjective evidence of pain and disability, as corroborated by family and neighbors; and all of these factors must be viewed against the applicant's age, educational background and work experience.' *Mode v. Celebrezze*, 319 F.2d 135, 136 (4th Cir. 1966). Pain, in itself, may be a disabling condition, *Marunich v. Richardson*, 335 F.Supp. 870 (W.D.Pa.1971), and the present record includes medical data which would not contradict, indeed, would support plaintiff's complaints of pain."

 Although Dr. Zaidan's statement that plaintiff was totally disabled is not determinative of the ultimate issue, his opinion, unaccompanied as it was by specific and complete clinical findings, is entitled to great weight. That is especially true here where he has been treating plaintiff since 1956 and is fully aware of her medical history and her complaints. The Secretary did recognize the doctor's proscription on heavy lifting and prolonged standing as being valid. However, the Secretary disregarded and did not evaluate the reasons for Dr. Zaidan's opinion that plaintiff was totally disabled and that any type of job would be detrimental. His worry was the fear of recurrence of the ventral herniae and the fact that she was a poor surgical risk.

Finally, what is most damaging to the Secretary's position is his failure to evaluate the testimony of Dr. Plummer. The Secretary zeroed in on only the response to the question which assumed plaintiff could do sedentary work. Given that assumption, Dr. Plummer listed several jobs in the area of plaintiff's residence. However, when given the assumption of plaintiff's symptomatology as she described it in her testimony and considering her age, education and work background, he believed that she would not be able to engage in any substantial gainful work. He stated that a prospective employer knowing her medical history and prospective operation would be unlikely to hire her.

This Court is mindful of the question Judge Biggs posed in *Hodson v. Celebrezze*, supra at 264:

"[W]hat employment opportunities are there for a man who can only do what applicant can do? Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available."

In this case, upon viewing the entire record, it is clear that there is no reasonable opportunity available for plaintiff to engage in substantial gainful employment. Plaintiff has sustained her burden of proof. Her motion for summary judgment will accordingly be granted. The Secretary's motion for summary judgment must be denied. An appropriate order will be entered.