Samuel WRIGHT

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services.

Civ. A. No. 81–2719.

United States District Court, E.D. Pennsylvania.

Oct. 28, 1983.

Cir.1982).

**539**

Robert S. Robbins, Philadelphia, Pa., for plaintiff.

Serene H. Dobson, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

This was an action brought by the plaintiff pursuant to Sections 205(g) and 1602 of the Social Security Act, as amended, 42 U.S.C. § 405(g) and § 1383(c)(3) to review a final decision of the defendant, the Secretary of Health and Human Services,[1] denying the plaintiff's claims for disability insurance benefits under 42 U.S.C. § 423, as amended, and supplemental security income under 42 U.S.C. § 1382. The matter is before this court on cross-motions of the parties for summary judgment. For the reasons which follow, the plaintiff's motion for summary judgment is granted and the defendant's motion is denied.

Plaintiff filed an application for disability insurance benefits on September 17, 1979 and an application for Supplemental Security Income ("SSI") on December 13, 1979 with the Department of Health and Human Services. Plaintiff claimed that he has been disabled since July 21, 1978 because of an injured back and deteriorating discs. The applications were denied by the Social Security Administration and the Pennsylvania State Agency.

On January 17, 1981, an Administrative Law Judge ("ALJ"), considering the case *de novo*, determined that plaintiff had the ability to perform minimally, sedentary work, and maximally, light work. The ALJ

---

**1.** At the time this action was brought the Department was labeled "Health, Education, and Welfare."

therefore concluded that plaintiff was not under a disability as defined in the Social Security Act.

Plaintiff brought an action for judicial review before this court after the Appeals Council denied a request for review on May 4, 1981 thereby rendering the Secretary's denial of benefits final. On October 14, 1981 this court remanded the case to the defendant to reconsider evidence previously ignored and to generally hear new evidence and make new findings of fact. This order was affirmed on November 17, 1981, upon a motion for reconsideration by defendant.

Subsequently the Appeals Council vacated its denial of plaintiff's request for review and remanded the case to the ALJ. The case was again considered *de novo* by the ALJ. In an August 17, 1982 decision the ALJ concluded that plaintiff retained residual functional capacity for light work and therefore plaintiff was not disabled for purposes of the Social Security Act. Based upon these findings the ALJ denied plaintiff's claim for benefits. After independently reviewing the record the Appeals Council adopted the ALJ's decision on March 14, 1983, thereby making it the final decision of the Secretary. The plaintiff again appealed to this court.

The issue before this court upon the parties' cross-motions for summary judgment is whether the Secretary's final decision is supported by substantial evidence.

█ Title 42 U.S.C. § 405(g) provides that the Secretary's findings as to any fact shall be conclusive if supported by substantial evidence. Substantial evidence has been defined to mean "such relevant evidence as a reasonable mind might accept to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting, *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir.1979). Accordingly, the sole purpose of this review is to determine whether, considering the record as a whole, there is substantial evidence to support the

Secretary's findings of fact. *Goldman v. Folsom*, 246 F.2d 776, 778 (3d Cir.1957). However, while the reviewing court may not try the case *de novo*, it is similarly prohibited from abdicating its "conventional judicial function" of assuring that administrative conclusions are rational. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 490, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir.1979); *Goldman v. Folsom*, 246 F.2d at 778.

"Disability" is defined in the Act as "any medically determinable physical or mental impairment," 42 U.S.C. § 423(d)(1)(A), which is so severe that the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy ..." 42 U.S.C. § 423(d)(2)(A). This definition of disability also applies to supplemental security benefits for the aged, blind, and disabled. 42 U.S.C. § 1382c(a)(3)(A), (B).

The Social Security Act provides disability benefits only to those individuals not capable of engaging in substantial gainful employment for the required period of time. 42 U.S.C. § 423(d). In the case *sub judice* plaintiff satisfactorily demonstrated the existence of medically determinable physical and mental impairments as is required by and defined in the Act. 42 U.S.C. §§ 423(d)(1)(A), (3); 1382c(a)(3)(A), (C). However, the ALJ found that plaintiff failed to show that these impairments prevent the plaintiff from engaging in any substantial gainful activity and determined that the evidence supported a finding that plaintiff was not disabled within the meaning of the Act. (Tr. 149). This court disagrees with this determination which has become the final decision of the Secretary, finding that it is not supported by substantial evidence.

█ There are four elements of proof to be weighed in determining whether there is substantial evidence to support the Secre-

tary's decision: (1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age. *Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972); *Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir.1962). Through his evaluation of the evidence in the case *sub judice* the ALJ determined that the medical impairments from which the plaintiff suffers are not such that would preclude plaintiff from engaging in any substantial gainful activity.

Regarding the plaintiff's physical impairments, the reports of several physicians basically are in accord as to the nature of plaintiff's back injuries, namely, a lower lumbar spine injury resulting in some reduction of motion. (Tr. 142–43, Exhibit 22.) However, there is conflict in the doctors' opinions as to the effect this type of injury has on the plaintiff's ability to function and the degree of pain and discomfort it causes. Dr. Liebenberg, an orthopedic surgeon examining plaintiff at the request of the Administration, felt that although plaintiff could no longer carry out his former activities involving heavy lifting, pushing, and pulling, he did retain sufficient mobility to do work of a sedentary nature or work involving a moderate amount of ambulation. (Tr. 138–39, 142–43.) Dr. Burch, also an orthopedic surgeon, examined plaintiff at the suggestion of plaintiff's family physician, Dr. Johnson. The report submitted by Dr. Burch asserted that plaintiff suffered a decreased range of motion and leg numbness, and found that plaintiff suffered a "moderate" amount of discomfort. (Tr. 143, Exhibit 30.) Dr. Johnson, however, concluded that the plaintiff was disabled. In his latest report dated April 28, 1982, Dr. Johnson stated that the plaintiff is unable to perform any type of work because of persistent pain in the lumbosacral area of the back, mild hypertension and anxiety. (Exhibit 33.)

Regarding the pain Dr. Johnson cites as contributorily disabling, the ALJ found it significant that Johnson's neurological examination of the plaintiff was negative, and also that he observed the claimant was not in any acute distress at the time of his examination. (Exhibit 24.) The ALJ also noted as significant the fact that no clinical evaluation as to the exact nature of the plaintiff's pain was attempted. Dr. Johnson apparently did not take x-rays beyond those done in 1978 in order to pinpoint the plaintiff's origin of pain. In addition, the plaintiff was not given a myelogram or subjected to nerve conduction studies so as to determine the extent to which the plaintiff was impaired. However, Dr. Liebenberg also did not perform the clinical studies which the ALJ found so necessary to give credence to the opinions of Dr. Johnson.

The ALJ has the duty to resolve conflicting medical opinions in carrying out his function of determining whether or not an individual is under a disability. 20 C.F.R. § 404.1526; *Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971); *Good v. Weinberger*, 389 F.Supp. 350, 355 (W.D.Pa.1975). In so doing, the ALJ is not bound to accept the plaintiff's own physician's conclusion without weighing it in balance with other evidence, both medical and vocational. *Good, supra*, 389 F.Supp. at 355; *Urgolites v. Finch*, 316 F.Supp. 1168, 1174 (W.D.Pa. 1970). However, the opinion of the treating physician is entitled to a great deal of weight. This is so even where such opinions are unaccompanied by particular clinical tests or findings. *Twardesky v. Weinberger*, 408 F.Supp. 842, 846 (W.D.Pa.1976). This was clearly not done in the case *sub judice*. The ALJ chose to discount the treating physician's assessment of plaintiff's pain. Under the circumstances the ALJ was obligated to give Dr. Johnson's opinions regarding the pain being suffered by plaintiff considerably more weight than they were given.

Dr. Johnson also recognized mild hypertension and anxiety as contributing factors

in his finding that the plaintiff is unable to perform any type of work. (Tr. 140, Exhibit 33.) As to the mild hypertension, Dr. Johnson mentions this condition in two separate reports. In both his February 8, 1980 and April 28, 1982 reports (Exhibits 14 and 33 respectively) he notes that the plaintiff suffers from "mild hypertension." However, Dr. Johnson does not indicate that this condition is not treatable and controllable. Nor is there any medical indication that plaintiff's high blood pressure is such that it should contribute to his alleged inability to do any sort of work. In fact, Dr. Johnson's own words state that the plaintiff's hypertense condition is a mild one. Therefore the ALJ was justified in finding that plaintiff's hypertension in and of itself does not rise to the level of having any disabling effect. *See Torres v. Secretary of Health, Education and Welfare,* 333 F.Supp. 676 (D.P.R.1971). However, the ALJ failed to consider the hypertension impairment in combination with the other impairments complained of, all of which were found by the ALJ to exist to some degree. (Tr. 149.) Such a combined effects evaluation is incumbent upon the ALJ. *Hicks v. Gardner,* 393 F.2d 299, 302 (4th Cir.1968).

Dr. Johnson, in a report dated February 8, 1980, also diagnosed the plaintiff as having anxiety neurosis. (Exhibit 14.) Dr. Johnson referred plaintiff to Dr. Wilson, a licensed psychologist, in order to determine his level of anxiety. Dr. Wilson examined plaintiff in March 1981 and submitted a report dated March 30, 1981. Dr. Wilson concluded that plaintiff suffers from anxiety to such an extent as to be unable to perform work of any kind and is thereby disabled. (Exhibit AC–1.)

Dr. Wilson based his conclusion on the plaintiff's outward nervousness and plaintiff's shame from being unable to support his family. The psychologist also stated that being a black intensifies the degree of anxiety felt by the plaintiff. Further, Dr. Wilson stated that plaintiff's hypertension and use of tranquilizers increased the severity of the anxiety suffered by plaintiff. (Exhibit AC–1.) The ALJ, despite not hav-

ing analyzed this non-exertional impairment cumulatively with the exertional impairments, found that plaintiff did not suffer such anxiety that, singly or in combination, would cause the plaintiff to be disabled.

The ALJ set out several reasons for his conclusion. First, in his report, Dr. Wilson does not indicate that back pain is causing the plaintiff to suffer anxiety. Instead he cites the inability to work as a result of back injuries as a major contributing factor to plaintiff's anxiety. This, the ALJ states, begs the question as to whether the plaintiff is unable to work because of excessive anxiety since it is the current lack of employment and not back pain which Dr. Wilson cites as causing a great deal of anxiety in the plaintiff. (Tr. 146.) Second, the conclusions submitted by Dr. Wilson are unsubstantiated by any clinical evaluation of the claimant's condition. No clinical or psychological testing was performed. (Tr. 146.) Third, since the time of plaintiff's visit with Dr. Wilson, he has never been seen by any other psychologist or psychiatrist for treatment of his condition. (Tr. 146.) While these observations may tend to indicate that plaintiff's non-exertional impairment alone does not reach disabling proportions, there is no excuse or reason for completely discounting and ignoring plaintiff's anxiety so as not to analyze its impact on plaintiff's ability to work in combination with the exertional impairments. This is especially so in a case such as this where the only non-exertional specialist to examine and evaluate plaintiff concludes that plaintiff is disabled. (Exhibit AC–1.) This professional opinion was uncontroverted by any professionally equivalent reports or testimony and should not have been discounted as it was. The ALJ also considered the relatively small amount of medication which plaintiff was taking as treatment for his emotional impairment and considered this clearly inconsistent with the claimed severity of plaintiff's anxiety neurosis. (Tr. 147.) This court recognizes that "such lay observation ... is entitled to little ... weight." *Van Horn v. Schweik-*

*er,* 717 F.2d 871 at 874 (3d Cir.1983), citing *Kelly v. Railroad Retirement Bd.,* 625 F.2d 486, 494 (3d Cir.1980) (quoting *Lewis v. Weinberger,* 541 F.2d 417, 421 (4th Cir. 1976)). Finally, the ALJ completely discounted the plaintiff's wife's testimony regarding plaintiff's emotional state. She testified that plaintiff has severe episodes of violence and crying. (Tr. 187.) The ALJ should not have so completely and unexplainedly discounted such testimony as to plaintiff's mental state. In light of the fact that there is no professional testimony stating that the plaintiff's mental condition is without severity, such relevant testimony by plaintiff's wife was entitled to some consideration. *See Cotter v. Harris,* 642 F.2d 700, 706–07 (3d Cir.1981). Again the consideration of such evidence bearing upon the extent of the severity of plaintiff's anxiety is of value since an eventual evaluation of the impairments in combination is necessary.

The ALJ also noted the plaintiff's subjective complaints. These subjective complaints and allegations of constant disabling pain were determined by the ALJ to be out of proportion to the evidence in the record. (Tr. 149.) The medical analyses of the three main examining physicians indicate some significant degree of movement of the back still available to the plaintiff. (Tr. 142–44.) Further, the ALJ noted that two of the three physicians failed to find plaintiff in anything more than moderate discomfort, while the third, Dr. Johnson, although indicating the plaintiff has intense pain, did not find him in any acute distress during an examination, and did not attempt to pinpoint or explore further the pain he believed plaintiff was suffering. (Tr. 142–43.) In addition to the medically documented evidence, the ALJ also relied on inconsistencies brought out by testimonial evidence in finding that plaintiff's allegations of disabling pain are not credible. The ALJ found it significant that the plaintiff has never been hospitalized for his disability. In the 1980 hearing plaintiff had stated that he was not hospitalized due to a lack of funds. (Tr. 41.) However, at that hearing it was brought to plaintiff's

attention that he was probably eligible for medical assistance. (Tr. 50.) The ALJ found that plaintiff's continued rejection of hospitalization belies his contention that he suffers disabling pain. Additionally, inconsistent statements made by the plaintiff in the 1980 and 1982 hearings regarding his efforts to obtain employment were viewed by the ALJ as casting further doubt upon the credibility of the plaintiff.

The Court of Appeals for the Third Circuit has declared that "[t]estimony of subjective pain and inability to perform even light work is entitled to great weight, particularly when ... it is supported by competent medical evidence." *Kent v. Schweiker,* 710 F.2d 110, 115 (3d Cir.1983), quoting, *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir.1979). While in the case *sub judice* there is disagreement amongst the examining physicians as to the evaluation of pain being suffered by plaintiff, there does exist competent medical evidence in the form of reports and findings by Dr. Johnson which support plaintiff's subjective complaints. The ALJ also failed to take into consideration that plaintiff has worked the same job for the past 23 years until the time of the back injury from which he now suffers. (*See* Tr. 36, Exhibit AC–1.) This consistent work history, ignored by the ALJ, mitigates strongly toward viewing plaintiff's current complaints of pain in a favorable, credible light. Finally the ALJ determined that the plaintiff's failure to obtain hospitalization indicated a lack of credibility in plaintiff's complaint of pain. (Tr. 143–44.) There appears to be no sound or rational basis for the ALJ to conclude that the lack of hospitalization had any bearing on the degree of pain suffered by the plaintiff, especially in light of the plaintiff's work history, Dr. Johnson's corroborative findings, and a high degree of uncertainty in the record regarding plaintiff's financial ability to afford such extensive treatment. *See Kent, supra.*

Based upon the ALJ's application of regulatory standards and his examination of medical data and findings, expert medical

opinions, and plaintiff's subjective complaints of pain, it is clear that the finding that plaintiff is capable of doing light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), is not based upon substantial evidence. The ALJ applied the incorrect regulatory standards for evaluating the evidence in the case *sub judice.*

The regulations require the ALJ to evaluate the individual's residual functional capacity, age, education and work history to determine the plaintiff's ability to do other work. 20 C.F.R. §§ 404.1520(f) and 416.-920(f).

The regulations set forth a progression of steps for the determination of disability, whereby a disability claim may be approved or denied at these various steps based upon the criteria involved at each level. 20 C.F.R. §§ 404.1520(a–f) and 416.920(a–f). In the case *sub judice*, the ALJ properly reached the final step of regulatory inquiry. *See* 20 C.F.R. §§ 404.1520(a–f) and 416.920(a–f). However, in analyzing the final regulatory step, the ALJ applied each of its factors (residual functional capacity, age, education and work history, defined and discussed in 20 C.F.R. §§ 404.1560–1569 and 416.960–969) to Table 2 of 20 C.F.R. Subpart P, Appendix 2, § 200.00 *et seq.* This application resulted in a grid-directed finding which under the circumstances of this case we feel was improper.

In the case *sub judice* the ALJ found that the plaintiff could participate in light work based upon medical testimony and evidence concerning plaintiff's exertional impairments. (Tr. 141–45.) The ALJ also found that plaintiff's (anxiety) non-exertional impairment did not amount to such a degree so as to preclude the plaintiff from engaging in any work. (Tr. 145–47.) The conclusion reached by the ALJ was that the non-exertional impairment does not adversely impact on the exertional impairments and therefore such impairments are not disabling by themselves or in combination. (Tr. 148–49.) While the ALJ reached this conclusion, it does not appear from the record that any analysis was made of the possible extent of the cumulative effect of

the exertional and non-exertional impairments upon plaintiff's ability to do any type of work. Therefore, even if there were substantial evidence to support conclusions that there is a residual functional capacity for light work based upon evaluations of the exertional impairments alone and the non-exertional impairment alone, there is no reasoning supporting the conclusion that the cumulative effect of these impairments does not preclude the plaintiff from doing light work.

■ In considering this failing by the ALJ and his finding that there is substantial evidence to conclude that plaintiff has the residual functional capacity to perform light work, this court finds that the ALJ was incorrect and disagrees with the conclusion of "not disabled." The ALJ, we feel, was incorrect as a matter of law in applying the charts in Appendix 2 to the instant matter. Applying the proper regulatory standards, discussed below, this court determines that substantial evidence supports a finding that plaintiff is disabled within the meaning of the Act.

Plaintiff suffered from both exertional and non-exertional impairments. (Tr. 54, 119–20, 149.) The regulations provide that where both types of impairments are present, and a finding of disabled under the rules [20 C.F.R. §§ 404.1520(d) and 416.-920(d)] cannot be made on strength (exertional) limitations alone, the rules reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of the extent of further diminution in the individual's work capabilities via the non-exertional limitations. 20 C.F.R. Part 404, Appendix 2, § 200.00(e)(2). In such dual impairment cases, not wholly determinable under the rules of Appendix 2, full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor (*i.e.* residual capabilities, age, education, and work experience). *Id.; see also* 20 C.F.R. §§ 404.1560–1569 and 416.960–969. The application of this standard will provide insight into the adjudicative weight

to be accorded each factor. 20 C.F.R. Part 404, Appendix 2, § 200.00(e)(2).

Interpreting the rules set forth in Appendix 2, the court in *Burnam v. Schweiker,* 682 F.2d 456, 458 (3d Cir.1982), stated that the medical-vocational grids do not purport to establish the existence of jobs for those afflicted with both exertional and non-exertional impairments. In *Santise v. Schweiker,* 676 F.2d 925, 934–35 (3d Cir.1982), the court stated that the rules of Appendix 2 [and its grids] may not be fully applicable where claimant suffers from non-exertional, instead of, or in addition to, exertional impairments. The court in *Santise* further stated that "a conclusion of disabled or not disabled is not directed" if an individual's vocational profile is not precisely contained in Appendix 2. *Santise,* 676 F.2d at 934; 20 C.F.R. Part 404, Appendix 2, § 200.00(d). The grids employed to obtain directed findings under Appendix 2 measure the individual's physical strength capabilities to work against the various other factors. *See* 20 C.F.R. §§ 404.1567 and 416.967; 20 C.F.R. Part 404, Appendix 2, Table 2. Therefore, to employ the grids in a dual impairment case is to effectively ignore the impact of the non-exertional impairment in determining whether substantial evidence supported the disabled/not disabled finding.

Rather than employing Table 2 to arrive at a directed finding of "not disabled" in the case *sub judice* the ALJ should have examined the evidence in accordance with the definitional discussions of each of the determinative factors. In addition to this the ALJ should have elicited testimony from the vocational expert present at the second hearing. (Tr. 159.) *In Singleton v. Schweiker,* 551 F.Supp. 715, 723–24 (E.D. Pa.1982), the court stated that a vocational expert's testimony is required when the grids are inapplicable due to the existence of a dual impairment situation. *See also Bryant v. Schweiker,* 537 F.Supp. 1, 2 (E.D.Pa.1982). Aside from being required, such testimony is an extremely helpful tool

in evaluating the plaintiff's impairments when such are examined outside the grids. No reason was given by the ALJ as to why the expert was not permitted to testify. Such expertise was required and would have been highly instructive. *See Singleton,* 551 F.Supp. at 723–24; *Bryant,* 537 F.Supp. at 2.

An examination of the case in accordance with the proper standard reveals that there is substantial evidence to support a finding of disability. 20 C.F.R. §§ 404.1561 and 416.961 state that an individual's residual functional capacity, age, education and work experience are explained in both the ensuing sections and Appendix 2 to evaluate plaintiff's ability to do any work.

The regulations provide that individuals approaching advanced age (i.e. ages 50–54) may be significantly limited in their ability to adjust to many jobs. 20 C.F.R. §§ 404.-1563(c) and 416.963(c). Individuals in this age group who have a history of unskilled work experience and even a high school education are significantly limited in their vocational adaptability. This is so even though they have a residual functional capacity for light work, 20 C.F.R. Part 404, Appendix 2 § 202.00(d). Vocational adaptability under these circumstances is even further limited where the residual functional capacity is for only sedentary work. *Id.* at § 201.00(g). In this case, plaintiff is 50 years of age.[2] Plaintiff, having performed the same unskilled work for 23 years, was found by the ALJ to possess no transferable work skills. (Tr. 36, 149); *see also* 20 C.F.R. §§ 404.1568 and 416.968. Therefore plaintiff has an unskilled work history as described in Appendix 2. Plaintiff does not have a high school education. He has only a fifth grade education. (Tr. 140.) By regulatory definition this amounts to only a marginal education, *i.e.,* just enough education to be able to perform simple unskilled tasks. 20 C.F.R. §§ 404.1564(b)(2) and 416.964(b)(2). As noted above, even those with a high school education whose age and

2. Note that plaintiff's having been 48 years old at the onset of this action does not change our

analysis of this case. (*Id.* at § 201.00(h)).

work history correspond to those of the plaintiff are deemed to have significantly impaired vocational adaptability. Given the plaintiff's substantial educational limitation his ability to adjust to "other" work is even further impaired.

Finally, in determining whether plaintiff is or is not disabled vis-a-vis his ability to do other work, an examination of residual functional capacity is required. The ALJ concluded that plaintiff has the capacity to do light work. (Tr. 149.) Light work is defined as involving the ability to lift up to 20 pounds and carry up to 10 pounds. Also necessary is the capability to withstand a good deal of walking and standing. When the job in this category calls for any extended sitting the plaintiff must have the ability to push and pull arm and leg controls.

In concluding that the plaintiff is capable of doing light work, the ALJ failed to analyze the combined effect of the exertional and non-exertional impairments. The ALJ should have examined the net effect of the psychologist's report and other non-exertional evidence as well as the exertional evidence to reach a work capacity determination. *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir.1968). Further, to arrive at a well reasoned conclusion regarding this work capacity factor the ALJ should have made use of the vocational expert present at the second hearing. The ALJ failed to do this and stated no reasons.

In addition to these errors the ALJ failed to accord the proper evidentiary weight to the plaintiff's subjective complaints of pain, the treating physician's testimony and reports, and the psychologist's report. The ALJ also failed to give sufficient weight to Dr. Burch's report stating that plaintiff should do no manual labor. (Exhibit 30.) By its definition light work encompasses some degree of manual labor since pushing, pulling, lifting and carrying are part of a "light work" job. 20 C.F.R. §§ 404.-1568(b) and 416.968(b). The ALJ discounted the opinion of two physicians that the plaintiff is incapable of light work and instead chose to construe the opinion of the physician examining on behalf of the Secretary as concluding that the plaintiff is capable of light work. In fact the "Secretary's Physician" merely stated that plaintiff was able to do sedentary work or work involving "only a moderate amount of ambulation." (Exhibit 13.) Light work was not mentioned in the report, and by definition light work involves more than mere ambulation.

In light of all the evidence presented in the record this court finds that at most plaintiff has a residual functional capacity for sedentary work (defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a)). When this residual capacity is viewed in connection with plaintiff's age, education level, and work history there is clearly substantial evidence to warrant a finding that the plaintiff is unable to engage in substantial meaningful employment and is therefore disabled within the meaning of the Act. 20 C.F.R. Part 404, Appendix 2, § 201.00(g); 42 U.S.C. § 423(d)(1)(A) and (2)(A).