**Earl BAZEMORE, Plaintiff,**

v.

**Margaret HECKLER, Secretary, Department of Health and Human Services, Defendant.**

**Civ. A. No. 83–300–WKS.**

United States District Court,
D. Delaware.

Oct. 1, 1984.

James S. Green, Connolly, Bove, Lodge & Hutz, Wilmington, Del., for plaintiff.

Joseph J. Farnan, Jr., U.S. Atty., Richard G. Andrews, Asst. U.S. Atty., Wilmington, Del., Beverly Dennis, III, Regional Atty., David Hyman, Asst. Regional Atty., Dept. of Health and Human Services, Philadelphia, Pa., for defendant.

OPINION

STAPLETON, Chief Judge.

Plaintiff, Earl Bazemore, brought this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Secretary of Health and Human Services denying his application for Social Security disability benefits.

Bazemore was first denied disability benefits by the Department of Health and Human Services on May 14, 1981. His application for reconsideration was similarly denied on November 12, 1981. Thereafter, plaintiff's case was considered de novo by Administrative Law Judge James W. Hunt (the "ALJ"), who denied disability benefits upon the finding that, although disabled as to his previous job, Bazemore retained the ability to perform sedentary work. On March 17, 1983, the Appeals Council rejected Bazemore's request for review of the ALJ's determination, thereby making final the ALJ's decision to deny Bazemore's application for disability. Both parties filed motions for summary judgment that were referred to the Magistrate. In his Report and Recommendation, the Magistrate found that the ALJ erred primarily for two reasons: first, that the ALJ's rejection of Bazemore's complaint of disabling pain was not based upon substantial evidence; and second, that the ALJ's excessive reliance on rules 201.24 and 201.25 of 20 C.F.R. 404, Subpart P, Appendix 2 (the "Grid") in denying Bazemore's claim was improper since Bazemore exhibited a nonexertional limitation—pain.

While I agree with the Magistrate that a remand is necessary in this case, I do so for

reasons that are, at least in part, different from those proposed by the Magistrate.

## I.

The following carefully detailed account of the facts has been taken, with slight modification, from the Magistrate's Report.

At the hearing before the ALJ, Bazemore was the only person to testify and presented the following. At the time of his injury, Bazemore's job required him to perform general maintenance: working on machinery; shoveling walks; moving furniture; changing light bulbs; etc. (Tr. 24–5, 31). On April 30, 1980, he carried six one-hundred pound drums of freon up two flights of stairs for use in an air-conditioning system (Tr. 32). After carrying up the sixth drum, he noticed that his back was hurting (Tr. 32–33). He went to a doctor who referred him to Dr. Monteleone (Tr. 33). Dr. Monteleone sent him to St. Francis Hospital where he stayed for a week and was placed in traction twice daily (Tr. 33). Bazemore testified that he had constant pain in his back and that the pain had become worse since the initial injury of April 30, 1980. (Tr. 34, 37). He was in traction twice a day for two hours each session. (Tr. 33). He was taking two different medications for pain which did not offer significant relief, and both made him drowsy. (Tr. 34–37). Bazemore indicated he tried not to ride buses because he found the jarring of buses painful. (Tr. 39). He also preferred not to drive but indicated he would do so in an emergency (Tr. 70); his son drove him to his doctor appointments. (Tr. 40). When asked by the ALJ what he did for most of the day, Bazemore stated, "I'm afraid to do most anything." (Tr. 39). He reported engaging in few activities at home, performing no exercise, watching some television and reading little. (Tr. 39–40). Bazemore limited his walking to two visits per week to a local store one block from his house. Attendance at church once a month appeared to be the only activity he engaged in outside of his home. (Tr. 40).

Bazemore also testified that he had attempted to go back to work (Tr. 25–26). However, he was unable to do the work despite being given frequent opportunities to rest by his employer. Consequently, he was discharged (Tr. 26). He also wears a low back corset which provides some relief (Tr. 92, 98, 100, 111).

The medical records reveal the following. Bazemore was admitted to St. Francis Hospital on May 30, 1980, with spasm of the lumbar fascia with a positive lasegue bilaterally at 45 degrees and a tender notch bilaterally and tenderness noticed also at the L5–S1 level with decreased deep tendon reflexes of both legs (Tr. 83). An x-ray of the lumbosacral spine showed mild degenerative changes of the lumbar vertebral body and a myelogram showed a very slight asymmetry on the right at the L4, 5 level which was considered to be not typical in appearance (Tr. 84–86). He was discharged June 5, 1980 (Tr. 84).

On January 29, 1981, Bazemore's treating physician, Dr. Italo Monteleone, reported that Bazemore was suffering from lumbar radiculitis, that he was restricted from bending, lifting, prolonged standing, or prolonged sitting, and that he had failed to respond to conservative therapy, including two courses of Trigger Block therapy (Tr. 88). An electromyogram which had been done October 21, 1980, showed low motor neuron involvement at the L4–5 level (Tr. 89). On June 16, 1981, Dr. Monteleone expressed the opinion that Bazemore was totally disabled as a result of his lumbar radiculitis. On May 27, 1982, he reported that Bazemore could not perform manual labor because he was restricted from prolonged sitting, standing, and walking and is limited in squatting, forward bending, climbing, twisting, reaching over his head and reaching in front of his body. Dr. Monteleone also referred Bazemore to Dr. Boulos for consideration of possible surgery and Dr. Boulos recommended continuation of conservative treatment (Tr. 95, 111–12).

On April 15, 1981, Bazemore was examined by a neurology consultant for the Dis-

ability Determination Service, Dr. Coburn. His report concluded that Bazemore had chronic lumbo-sacral strain with radiculopathy, a possible herniated lumbar disc L4–5, and a psycholphysiological reaction (Tr. 92). He noted markedly decreased sensation over the entire left side, tenderness over the entire lumbar spine, weak reflexes in limbs, markedly decreased motor power in all limbs, and mild atrophy in the left leg (Tr. 92). Dr. Coburn examined Bazemore again on October 19, 1981, and noted improvement in his range of motion and continued tenderness over each sciatic nerve in Bazemore's buttock (Tr. 98). His impression was of a probable herniated IV disc, lower lumbar (Tr. 98).

Bazemore was also examined by Dr. Arminio, an expert employed by the workmen's compensation carrier for his former employer. On March 5, 1981, Dr. Arminio expressed his opinion that, based on his examination on March 3, Bazemore was totally disabled at that time (Tr. 103–04). On April 15, 1981, he stated that after reviewing additional medical records he was of the opinion that Bazemore's condition had deteriorated between June 1980 and March 1981 (Tr. 102). On December 15, 1981, Dr. Arminio reported that a physical examination on December 3 revealed ongoing tenderness in the low back primarily on the left side and radiation of the discomfort from the low back into the groin and up into the upper back, that Bazemore's attempts to extend his activities resulted in increased difficulties, and that while he could perform some activities in an eight hour day, they would be limited to short periods of time (Tr. 100–01).

There is also an evaluation report on Bazemore by Rehabilitation Consultants, Inc. in the transcript. The evaluation, dated March 25, 1982, shows a loss of strength in the right arm and left knee, diminished motor skills in the right arm and left leg, marked limitations for standing and walking, moderate limitations for sitting, marked limitations for squatting, and moderate limitations for forward bending, climbing, twisting and reaching above the head (106–110).

Also included in the transcript are the various disability determination and transmittal reports, disability reports, and papers relating to Bazemore's workmen's compensation claim. His disability claim was accepted by the workmen's compensation carrier (Tr. 57, 60, 114–17). The two social security interviewers, whose reports are in the record, noted Bazemore's discomfort and his difficulty walking (Tr. 74, 79). Both disability determination and transmittal reports recognize that Bazemore suffered from chronic lumbosacral strain with radiculopathy, but conclude that he could still perform light work (Tr. 48, 51). Both list as examples of jobs he could perform: air conditioning tester, telephone installer and repairman and telephone cable repairman (Tr. 48, 51). However, there is no indication in the record that the persons making these reports are qualified as vocational experts.

The ALJ summarized his findings as follows:

1. The claimant met the special earnings requirements of the Act on April 30, 1980, the date the claimant stated he became unable to work, and continues to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since April 30, 1980.

3. The medical evidence establishes that the claimant has severe chronic lumbar strain with radiculopathy, but that he does not have an impairment listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. Claimant's allegation of disabling pain is not supported by the evidence of record.

5. The claimant has the residual functional capacity to perform work-related functions except for work involving prolonged sitting, standing, walking, or heavy lifting. (20 CFR 404.1545).

6. The claimant is unable to perform his past relevant work as maintenance man (20 CFR 404.1565).

7. The claimant has the residual functional capacity to perform sedentary work affording him the opportunity to sit or stand at will work [sic] (20 CFR 404.1567).

8. The claimant is 40 years old, which is defined as younger (20 CFR 404.-1563).

9. The claimant has a limited education (20 CFR 404.1564).

10. In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material.

11. Section 404.1569 of Regulations No. 4 and Rules 201.24 and 201.25 Table No. 1 of Appendix 2, Subpart P, Regulations No. 4 direct a conclusion that, considering the claimant's residual functional capacity, age, education, and work experience, he is not disabled.

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.-1520(f) ).

Based on the above, the ALJ determined that 20 C.F.R. 404.1569 and Rules 201.24 and 201.25 of the grid "*direct* a conclusion that, considering the claimant's residual functional capacity, age, education, and work experience, he is not disabled." (Tr. 10) (emphasis added).

## II.

■ Under the Social Security Act, the Secretary's findings as to any fact shall be conclusive if "supported by substantial evidence." 42 U.S.C. § 405(g). Substantial evidence has been defined as " 'such relevant evidence as a reasonable mind might accept to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–217, 83 L.Ed. 126 (1938) ); *Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150, 1152 (3d Cir.1983). While considerable deference is afforded to the Secretary's decision, the Third Circuit has made clear that the decision must be "accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). Thus, in basing his or her decision on substantial evidence, the ALJ must provide "not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Id.* at 705. The substantial evidence hurdle is not overcome by a single piece of evidence if the ALJ ignores or fails to resolve conflicting evidence. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983). Nor is evidence substantial if it is overshadowed by other evidence, or "if it really constitutes not evidence but mere conclusion." *Id.*

■ The claimant has the initial burden of establishing that he was unable to return to his customary occupation. *Wallace*, 722 F.2d 1153; *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir.1979). If the claimant satisfies his or her burden of proving disability with respect to past employment, the burden shifts to the Secretary to demonstrate that the claimant given his or her age, education and work experience, has the capacity to perform specific jobs existing in the national economy. *Wallace*, 722 F.2d at 1153; *Rossi*, 602 F.2d at 57.

In the present case, Bazemore introduced ample evidence demonstrating the extent to which his back injury prevented him from engaging in his former job as a maintenance person. Indeed, the ALJ explicitly found that Bazemore was disabled with regard to his past work. (Tr. 10). Bazemore further maintained that he was totally disabled as a result of pain from his back injury. The ALJ found, however, that Bazemore's allegation of disabling pain was not supportable. (Tr. 9). The issue before this Court, therefore, is whether the ALJ's rejection of Bazemore's complaints of disabling pain was based on substantial evidence.

At the hearing, Bazemore was the only person to testify. He represented that he was in constant pain from his back injury and that the pain had grown worse since his injury in 1981. It is also apparent from Bazemore's testimony that his pain had caused him to significantly restrict the scope of his daily routine. More importantly, Bazemore's testimony about the extent to which his activities were circumscribed by his pain appears consistent throughout and stands unrepudiated by any contrary evidence of record.

As to the medical evidence, the various physicians who examined Bazemore generally agreed that he suffered from a significant lower back injury that restricted the physical activities that he could perform. It is less clear, however, what opinions, if any, the examining experts held concerning Bazemore's complaints of disabling pain. Dr. Monteleone initially indicated in a letter dated June 16, 1981, that Bazemore was totally disabled as a result of lumbar radiculitis. Dr. Monteleone, however, did not opine as to the nature and extent of pain that Bazemore might be experiencing as a result of that injury. (Tr. 95). Subsequently, in a letter dated May 27, 1982, Dr. Monteleone rather cryptically stated that Bazemore was currently unable to perform "manual labor" as a result of the limitations upon the positions he could assume and the movements he could perform. (Tr. 127). Again Dr. Monteleone says nothing about plaintiff's pain.

On April 15, 1981, Dr. Coburn examined Bazemore and found, in addition to a number of physical and medical abnormalities, "tenderness over the entire lumbar spine." (Tr. 97). Dr. Coburn again examined Bazemore on October 19, 1981, and again found tenderness in the lumbar area as well as over both sciatic nerves in the buttocks. (Tr. 98).

Dr. Arminio first saw Bazemore on March 3, 1981, and found him totally disabled; he fully credited Bazemore's complaints of pain, stating, "Examination at this time revealed that he does have exquisite tenderness in the low back with muscle guarding in the low back." (Tr. 103). Subsequently, Dr. Arminio wrote that after reviewing additional medical records he believed Bazemore's condition had worsened between June 1980 and his initial examination of March 3, 1981. Dr. Arminio's last report of December 15, 1981, indicated that Bazemore continued to experience tenderness in the low back, primarily on the left side, that radiates into both the groin and upper back. Dr. Arminio also indicated, that at this time Bazemore could resume light work subject to a number of postural limitations. (Tr. 100–101).

In sum, the relevant medical testimony of record reveals that two of the three examining physicians explicitly acknowledged that Bazemore suffered from pain associated with his lower back condition. One of these two, Dr. Arminio, appeared to base his initial determination of total disability primarily upon a finding of "exquisite tenderness" in the lower back. The third physician, Dr. Monteleone, without referring to Bazemore's pain, initially concluded that he was totally disabled and thereafter indicated that he was prohibited from performing manual labor.

In rejecting Bazemore's allegation of disabling pain, the ALJ did not support his finding with any medical evidence of record, nor did he substantively challenge Bazemore's testimony about his pain and its significant effects on his lifestyle. Rather, the ALJ stated in conclusory fashion:

> In finding that claimant does have the capability of performing sedentary work, the undersigned is aware of claimant's allegation of disabling pain. However, in view of the fact that claimant, at the hearing, did not exhibit any signs of incapacitating pain, the undersigned concludes that claimant's allegation of pain of a disabling nature is not supportable. (Tr. 9).

The ALJ erred in so disposing of Bazemore's allegations merely on the basis of his demeanor at the hearing. While physical appearance may be a factor that the Secretary can consider in denying disabili-

ty, standing alone it does not constitute substantial evidence capable of supporting a finding of not disabled. *Lewis v. Califano,* 616 F.2d 73, 76 (3d Cir.1980). Indeed, in repudiating Bazemore's testimony, the ALJ relied upon the notorious "sit and squirm test" which has been "roundly condemned" as a means of deciding disability cases. *Van Horn v. Schweiker,* 717 F.2d 871, 874 (3d Cir.1983).

The Third Circuit has made patently clear that the ALJ is not free to casually dispose of a claimant's subjective complaints of pain solely on the basis of his or her behavior during a brief hearing. Pain itself may be a disabling condition, notwithstanding the difficulty in resolving questions of pain with any degree of certainty. *Taybron v. Harris,* 667 F.2d 412, 415 (3d Cir.1981). "[E]ven pain unaccompanied by objectively observable symptoms which is nevertheless real to the sufferer and so intense as to be disabling will support a claim for disability benefits." *Id.* at 415 (quoting *Ber v. Celebrezze,* 332 F.2d 293, 299 (2d Cir.1964)). In this case, however, plaintiff *was able* to point to more than mere subjective evidence, for several of the physicians who treated him noted tenderness of varying degrees in his lower back region and surrounding area. "Testimony of subjective pain and inability to perform even light work is entitled to great weight, particularly when, as here, it is supported by competent medical evidence." *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir.1979). Moreover, a claimant, such as Bazemore, is entitled to substantial credibility if he has a work record of continuous employment for a substantial duration of time. *Dobrowolsky,* 606 F.2d at 409. The Social Security Administration's records for Bazemore show a continuous record of earnings for each year from 1960 through 1979. (Tr. 54–55).

It was simply not enough for the ALJ to reject Bazemore's allegations of pain on the ground that Bazemore failed to exhibit a requisite degree of agony at the hearing. The substantial evidence burden imposes upon the ALJ the duty to scruti-nize the whole record, *Dobrowolsky,* 606 F.2d at 407; *see Wier v. Heckler,* 734 F.2d 955, 961 (3d Cir.1984), and this includes a duty to explain not only evidence that supports the ALJ's holding, but evidence that was rejected by the ALJ as well. Other than the ALJ's summary invocation of the "sit and squirm test," the record is devoid of any indication that the ALJ seriously considered Bazemore's complaint of persistent and disabling pain as supported by objective medical findings and by Bazemore's uncontradicted testimony. Further, there is no indication in the record that the ALJ considered Bazemore's long work history as a factor enhancing his credibility.

### III.

The regulations governing use of the grid clearly indicate that the grid is not to govern all disability cases. 20 C.F.R. § 404.1569 & Appendix 2, § 200.00(d). Section 200.00(d) of Appendix 2 states: "If an individual's specific profile is not listed within this Appendix 2, a conclusion of disabled or not disabled is not directed." Since the grid applies solely to disabilities manifesting themselves in strength or so-called "exertional" limitations, the grid has limited utility where a complainant manifests "non-exertional" limitations. Again, the regulations are explicit in this regard. Section 200.00(e) states:

Since the rules are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, they may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental, sensory, or skin impairments. In addition, some impairments may result solely in postural and manipulative limitations or environmental restrictions. Environmental restrictions are those restrictions which result in inability to tolerate some physical feature(s) of work settings that occur in certain industries or types of work, e.g., an inability to tolerate dust or fumes.

The Third Circuit has interpreted these rules according to the plain meaning of their language. In *Santise v. Schweiker,* 676 F.2d 925 (3d Cir.1982), the Court stated that " 'a conclusion of disabled or not disabled is not directed' if an individual's vocational profile is not precisely contained in Appendix 2." *Id.* at 934 (quoting and construing 20 C.F.R. § 404.1569 & Appendix 2, § 200.00(d) ). *See Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 1953–55 & n. 5, 76 L.Ed.2d 66 (1983). The Court further indicated that the rules " 'may not be fully applicable' when a claimant suffers from non-exertional, instead of or in addition to exertional, impairments." *Id.* 676 F.2d at 934–35 (quoting and construing 20 C.F.R. part 404, Appendix 2, § 200.00(e) ).

In *Burnam v. Schweiker,* 682 F.2d 456 (3d Cir.1982), the Third Circuit has more recently considered the meaning of Section 200.00(e)(2) of 20 C.F.R. § 404, Appendix 2, which states:

> However, where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contradicted by the nonexertional limitations. Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this Appendix 2, full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussion of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor.

In *Burnam,* the ALJ had concluded that plaintiff's nonexertional limitations standing alone did not warrant a finding of disability; the ALJ then relied solely on the grid to determine that plaintiff's exertional injuries were not serious enough to bar him from sedentary work. *Id.* at 457. The Third Circuit held that the ALJ's approach—first determining that the claimant's nonexertional restrictions were not alone disabling and then basing a decision solely on the grid—was contrary to the directive of rule 200.00(e)(2). "The medical-vocational grids do not purport to establish the existence of jobs for persons like Burnam who are afflicted with both exertional and nonexertional impairments." *Id.* at 458. *Burnam* held that where an individual is afflicted with both nonexertional and exertional limitations, the regulations require the ALJ to move beyond the grid and fully consider "all of the relevant facts in the case." *Id.* at 458. Thus, the ALJ erred in *Burnam* because he failed to consider "whether work existed for a person with the *combination* of impairments Burnam possessed." *Id.* (emphasis supplied by Court).

■ In the present case, the ALJ has similarly erred. It is clear from the record that Bazemore's ability to maintain gainful employment was limited by a variety of postural restrictions, which are defined by the regulations as nonexertional. 20 C.F.R. 404, Appendix 2, § 200.00(e). *See Aggen v. Schweiker,* 553 F.Supp. 32, 35–36 (D.S.D.1982) (Reliance on grid inappropriate where claimant could only sit in a recliner due to pain).

Plaintiff's treating physician, Dr. Monteleone, indicated that plaintiff was limited in "prolonged sitting, standing and walking" and also in "squatting, forward bending, climbing, twisting, reaching above his head and reaching in front of his body." (Tr. 127). Dr. Arminio, pointed to similar limitations on plaintiff's ability to move about the workplace:

> Lifting, pushing, and pulling would have to be limited to 20 lbs., and it would help if he could be off of his feet for part of the time; but he could walk some distance. He can certainly manipulate

and use his upper extremities without any restrictions. Partial stooping, not full stooping, could be performed occasionally. He should not be expected to kneel or crawl, and he should not do any climbing of ladders or work in high places. Throughout an eight hour day, he could perform some activities for short periods of time.

(Tr. 101). Bazemore was also examined by a rehabilitation specialist who found that he displayed "marked limitations for standing and walking and moderate limitations for sitting" and that when allowed to alternate between these activities, plaintiff "reports the ability to remain active for one and a half to two hours before requiring a rest period." (Tr. 106). The record is devoid of any evidence that even suggests that Bazemore's ability to return to work would not be hampered by his need to alternate between sitting and standing and his difficulty in assuming various other positions. Indeed, the ALJ appears to have fully accepted that Bazemore's ability to maintain gainful employment was qualified by the postural limitations imposed by his back injury, for the ALJ stated in his findings that "the claimant has the residual functional capacity to perform work-related functions except for work involving prolonged sitting, standing, walking or heavy lifting." The ALJ further found that "the claimant has the residual functional capacity to perform sedentary work affording him the opportunity to *sit or stand at will.*" (Tr. 10). (emphasis added).

Notwithstanding these findings, the ALJ relied solely on the grid in denying Bazemore's disability claim, and did not consider the extent to which Bazemore's work capability was further diminished by his nonexertional limitations. Since the ALJ failed to determine whether work existed for a person with the combination of nonexertional and exertional limitations possessed by Bazemore, the Secretary's decision is not supported by substantial evidence. *Burnam*, 682 F.2d at 458.

On remand, the ALJ should solicit the advice of a vocational expert concerning the impact that Bazemore's nonexertional impairment may have on his qualifications for sedentary work.[1] While the Third Circuit has deemed this requirement unnecessary when the grid is fully applicable to an individual's disability profile, *Santise*, 676 F.2d at 937–39, the Court appeared to indicate that testimony from a vocational expert is necessary when the applicant possesses nonexertional deficiencies. *Id.* at 935 (citing *Walker v. Harris*, 504 F.Supp. 806, 811 (D.Kan.1980)). Various district courts in this circuit have continued to require the opinion of a vocational expert when the grid is not fully applicable. *E.g., Allen v. Schweiker*, 567 F.Supp. 1204, 1210 (D.Del.1983); *Wright v. Schweiker*, 575 F.Supp. 538, 545 (E.D.Pa.1983).

### IV.

Although the ALJ's decision was infirm in several respects, the record does not warrant a grant of summary judgment to the claimant, since an appropriate development and analysis of the evidence in the case could possibly lead a reasonable trier of fact to conclude that Bazemore retains the residual capability to perform sedentary work. *Kent*, 710 F.2d at 116; *Allen*, 567 F.Supp. at 1211. This case will be remanded for reconsideration not inconsistent with this opinion.

1. This is not a situation, as in *Hernandez v. Heckler*, 704 F.2d 857, 862–63 (5th Cir.1983), where the ALJ *expressly* rejected the claimant's contention that his work capability was further diminished by his nonexertional limitation, and the Third Circuit held that, therefore, the advice of a vocational expert was not necessary. Here the ALJ conceded that Bazemore's postural limitations restricted his work capability, but nevertheless relied exclusively on the grid.