**Christine Bishop ALLEN, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

Civ. A. No. 82–625.

United States District Court,
D. Delaware.

July 8, 1983.

Eliot Alazraki, Wilmington, Del., for plaintiff.

Joseph J. Farnan, Jr., U.S. Atty., William C. Carpenter, Jr., Asst. U.S. Atty., Wilmington, Del., for defendant; Diane C. Moskal, Regional Atty., John Newton, Asst. Regional Atty., Deborah L. Diehl, Legal Asst. of Dept. of Health and Human Services, Philadelphia, Pa., of counsel.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This is an action under Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health and Human Services (hereinafter "Secretary") denying Christine Bishop Allen's claim for disability insurance claims.

It has become an almost routine occurrence for this Court to review the denial of Social Security disability benefits. This case is quite similar to many of these type cases. As is often the situation, the Administrative Law Judge's (hereinafter "ALJ") opinion is replete with the proper conclusionary terms which "justify" the denial of the claim. *See Smith v. Califano,* 637 F.2d 968, 969 (3d Cir.1981). As is also his prerogative, the ALJ has decided every important issue of credibility against the claimant. Given the fact that these findings of the ALJ are entitled to considerable deference, it is difficult to decide that the Secretary's denial of benefits is incorrect when all the appropriate legal incantations have been utilized to justify that decision. Nevertheless, upon careful review, the Court concludes that the findings of the ALJ are not supported by substantial evidence on the record and the case will be remanded to the Secretary.

## BACKGROUND

The claimant, Christine Bishop Allen, was born on August 25, 1950. She is a high school graduate and has completed a three-year college nursing course. Up through December 1977, the claimant worked at the St. Francis Hospital in Wilmington, Delaware, first as a licensed practical nurse and later as a registered nurse.

At the administrative hearing, the claimant testified that she injured her back at work on December 27, 1977 while lifting an extremely heavy patient. The claimant, however, continued to work until July 28, 1978 despite the injury. At that time, the claimant was no longer able to work because of severe lower back pain, and she was admitted to St. Francis Hospital as a patient. The claimant returned to work on September 18, 1978, but continued at her job only until January 1, 1979. The claimant has not worked since that time.[1]

Subsequently, due to continued complaints of pain in her lower back and legs, surgery was performed on the claimant on December 12, 1979. The surgery, which consisted of a hemilamenctomy, discectomy, foramionotomy, and lumbar nerve root block, was performed at L4–5 on the right. (Tr. 134–135).

Although the claimant's condition was improved immediately after the surgery, the complaints of pain recurred shortly thereafter. In July of 1980, the claimant complained of radicular pain in her leg on the right side. (Tr. 147). One of the claimant's treating physicians, Dr. Magdy I. Boulos, concluded as of September, 1980, that the claimant was suffering from a 50% limitation of her back. (Tr. 150). Another treating physician, Dr. Constantine Michell, determined in December of 1980 that the claimant's lower back disability precluded her from returning to her job as a registered nurse. (Tr. 158).

In February 1981, the claimant was again admitted to St. Francis Hospital with severe back pain with radiation to both legs. As a result of tests taken at St. Francis, the

---

1. As a result of her job related injury, the claimant receives both disability insurance payments from her employer along with workmen's compensation benefits. (Tr. 64–68).

claimant was referred to Dr. Perry Black at the Hahnemann Hospital in Philadelphia, Pennsylvania. Dr. Black believed that treatment with lumbar facet nerve blocks would offer the claimant a 25% chance of reasonable pain relief from what he described as "[i]ntractable pain low back and lower extremities." (Tr. 215, 216). On April 15, 1981, Dr. Black performed surgery on the claimant which consisted of permanent radiofrequency lumbar facet denervations. (Tr. 216). This surgery, however, did not alleviate Allen's complaints of significant lower back pain.

Because her back problems have not been corrected by surgery, the claimant continues to take a variety of medications for relief from pain and muscle spasms. (Tr. 41).[2] These medications are prescribed to diminish the claimant's pain, and also to prevent the occurrence of muscle spasms. The claimant testified that she frequently develops spasms in her legs that can last from an hour to several days. (Tr. 46–47). Allen also testified that the drugs prescribed for the muscle spasms, Eguagesic, Clinoral, and Vistaril, do not afford her a great deal of relief. (Tr. 42, 47).

The claimant first filed an application for disability benefits on August 27, 1978. That claim was denied at the initial level, and the claimant did not pursue her claim any further at that time.

The claimant reapplied for benefits with the Secretary on August 19, 1980. Allen sought disability benefits as of July 28, 1978, primarily based upon back injury and residual symptoms of surgery.[3] As is the customary practice, Allen's application was referred by the Secretary to the Disability Determinations Service of the State of Delaware (hereinafter "Service"), for initial review. The Service desired an evaluation from another physician in order to ascertain the claimant's actual condition, and selected Dr. William B. Campbell of Salisbury, Maryland to examine Allen. Dr. Campbell performed an examination of Allen and reported his findings to the Service. In a letter to the Service dated July 20, 1981, Dr. Campbell concluded:

I think that Ms. [Allen] is significantly disabled because of her low back problem and is unable to function as a general duty nurse. I do not know what is in store for her in the future but it would not be unlikely that she continue to have back pain of a significant degree for an undetermined time. (Tr. 178).

Despite Dr. Campbell's findings, the Service determined that Allen was not disabled within the meaning of the Social Security Act. (Tr. 79–80; 83–84).

On November 23, 1981, a *de novo* hearing before an Administrative Law Judge of the Department of Health and Human Services was held concerning Allen's claim. In a decision dated April 19, 1982, the ALJ determined that although Allen could no longer perform her former occupation as a nurse, she retained the ability to engage in sedentary work. (Tr. 17). Consequently, the ALJ concluded that Allen was not disabled for purposes of the Social Security Act and thus was not entitled to disability insurance benefits. (Tr. 18). Thereafter, the Appeals Council denied Allen's request for review of the ALJ's decision, and the

---

**2.** In connection with her back problems, Allen takes the following drugs: Clinoral (150 mg. tablets twice daily); Eguagesic (two tablets four times a day as needed); Talwin (50 mg. tablets as needed for pain); Tylenol with Codeine (½ grain codeine as needed for pain). In addition, the claimant suffers from other disorders, *see* footnote 3, *infra,* for which she takes the following medications: Nitroglycerone (1–150 grains as needed for chest pain); Ascription (two tablets as needed for pain every 4–6 hours); Mylanta II (two teaspoons after every meal and at bedtime). (Tr. 212). It also appears that the claimant has been on a variety of other medications for her back at different times. (Tr. 114–115).

**3.** In addition to the back problems previously outlined, the claimant also suffers from other disorders including mitral valve prolapse of the heart, a hiatal hernia with reflux, and a form of degenerative arthritis. These additional problems, however, do not appear to be debilitating and hence do not bear significantly on the claim for disability benefits. (Tr. 220).

Secretary's decision denying disability benefits became final on July 12, 1982. (Tr. 4). Subsequently, Allen filed the present action on September 14, 1982.

## DISCUSSION

■ The Court only has limited review over the Secretary's final decision under the Social Security Act. If the Secretary's decision is "supported by substantial evidence," it must be affirmed. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 209, 216, 83 L.Ed. 126 (1938). Nevertheless, despite the considerable deference afforded to the Secretary's decision, the administrative decision must be accompanied by a clear and satisfactory explication of the basis on which it rests. *Cotter v. Harris,* 642 F.2d 700, 703–04 (3d Cir.1981). Consequently, when there is conflicting probative evidence in the record, the ALJ must explain why certain evidence was rejected. *Id.* at 706–707. An explanation of the reasons why probative evidence was rejected is necessary so that a reviewing court can determine whether the reasons for rejection were arbitrary or improper. *Id.*

The claimant, Allen, has the initial burden of establishing that she was disabled within the meaning of the Social Security Act. *Jones v. Schweiker,* 524 F.Supp. 739, 741 (N.D.Ala.1981); *see Lewis v. Califano,* 616 F.2d 73, 76 (3d Cir.1980). Turning to the record in this case, the claimant offered substantial evidence to the ALJ concerning the details and history of her back problem. The reports of her treating physicians, Dr. Boulos, Dr. Michell, and Dr. Black, all indicate that the claimant suffers from a significant back problem which causes her a great deal of pain. Indeed, the ALJ agreed with this conclusion. (Tr. 15). Most importantly, however, Allen submitted the report of the Secretary's own expert doctor, Dr. William B. Campbell. Dr. Campbell found that the claimant was "significantly disabled because of her low back problem" and that "it would not be unlikely that she continue to have back pain of a significant degree for an undetermined time." (Tr. 178). This finding of disability by Dr. Campbell, who was hired by the Secretary, is entitled to substantial weight. *See Lewis v. Califano,* 616 F.2d at 76. Based upon the findings of Dr. Campbell, along with the reports of her treating physicians, it is evident that the claimant has carried her initial burden to prove disability. *See* 20 C.F.R. § 404.-1520(d) (impairment must meet or equal criteria set forth in Part 404, Appendix 1); *see also* 20 C.F.R. Part 404, Appendix 1, Section 1.00 (outlining disabilities based upon musculoskeletal system).

■ Once the claimant sustains her burden of proving disability, the burden then shifts to the Secretary to prove non-disability. *Lewis v. Califano,* 616 F.2d at 76. The ALJ offered no explanation why he rejected Dr. Campbell's finding of disability. The failure of the ALJ to explain his rejection of this highly significant evidence was error. *See Cotter v. Harris,* 642 F.2d at 707. This error alone would be sufficient to remand the case to the Secretary. There are, however, other fundamental deficiencies in the ALJ's report. Most significantly, the Secretary failed to provide substantial evidence to rebut the plaintiff's prima facie showing of disability.

The ALJ's review of the record sets forth the following reasons for his finding of non-disability:

The claimant's principal limitation is caused by low back pain. The reporting physicians are in general agreement that such pain is of a significant level, precluding the claimant from engaging in her nursing job, and the undersigned concludes that such evaluation is substantiated by the documentary evidence of record. Yet the findings on clinical tests and laboratory studies are not of a level

which supports the existence of disabling pain, an impression reinforced by the claimant's level of medication, which overall is not especially high (Exhibits 14 and 36). At the hearing, the claimant entered and left the hearing room, took her seat and rose from it, and participated in the proceedings actively, fully, and normally, with no indications of any physical limitation substantially interfering with her exertional capabilities, or of pain or discomfort interfering with her concentration or limiting her memory, cognition, or mental processes in general. Her testimony to the effect that she does a relatively wide range of exertional household chores, regularly drives a car, is frequently visited by friends, and engages in hobbies generally requiring significant concentration such as reading and hooking rugs, demonstrates a capacity to perform more than sporadic, intermittent, or transitory activities, contraindicating the existence of disabling pain. (Tr. 15–16).

In essence, the ALJ made a finding of non-disability on the following four grounds:

1. That in his opinion, a reading of the clinical tests and laboratory studies do not demonstrate that the claimant suffers from disabling pain;

2. That in his opinion, the claimant's level of medication is not "especially high," which infers that the claimant is not suffering from disabling pain;

3. That in his opinion, from his own observation of the claimant, that she did not appear to be suffering from disabling pain; and

4. That in his opinion, the claimant's daily routine contraindicates any conclusion that the claimant is suffering from disabling pain.

None of these determinations are supported by the record.

■ First, conclusions 1, 2 and 3 are all improper because they represent the ALJ's

personal medical judgments concerning the claimant's condition. *Kent v. Schweiker,* 710 F.2d 110, 115 (3d Cir.1983). This was error because the ALJ is not free to set his own expertise against that of a physician. It is the duty of the ALJ to choose between properly submitted medical evidence, but it is not his function to assume the role of a doctor. *See Gober v. Matthews,* 574 F.2d 772, 777 (3d Cir.1978). With respect to conclusion 1, although the record includes reports of the numerous tests performed on the plaintiff, no report states that these tests demonstrate that the claimant does not suffer from disabling pain. A layman such as the ALJ is not free to draw his own conclusions as to the meaning of these tests. *See Kent v. Schweiker,* Slip Op. at 9. Indeed, the only two reports in the record which explicate in lay terms the claimant's condition are contradictory to the ALJ's conclusion. Dr. Black indicated that Allen suffered from intractable pain in the low back and lower extremities. (Tr. 215, 216). Further, as previously stated, Dr. Campbell reported that the claimant suffered from back pain of a significant degree. Consequently, the ALJ's conclusion that the clinical tests do not demonstrate disabling pain is not supported by substantial evidence.

■ With respect to conclusion 2, the ALJ was also setting forth his own opinion concerning the claimant's use of medication. Again, the Secretary must be admonished that although the duty of the ALJ is to choose between properly submitted medical testimony, it is not the ALJ's function to assume the expertise of a doctor. *See Gober v. Matthews,* 574 F.2d at 777. Furthermore, even accepting the propriety of the ALJ's questionable conclusion that Allen's medication level is not "especially high,"[4] a low medication level does not necessarily lead to the conclusion that the claimant does not suffer from disabling pain. Consequently, not only was the ALJ's finding improper, it was irrelevant.

---

**4.** *But see* footnote 2, *supra.*

■ With respect to conclusion 3, it is improper for the ALJ to reject professional medical opinion on the basis of his own lay observations. *Lewis v. Califano,* 616 F.2d at 76. Consequently, the ALJ's conclusion that the claimant did not appear to be in significant pain at the administrative hearing does not constitute substantial evidence to support the Secretary's decision. *Id.* at 77.

■ The final basis upon which the ALJ reached his conclusion that the claimant is not disabled rests upon the claimant's daily activities. The ALJ found that the claimant's ability to engage in some physical activity contradicted a finding of disabling pain. The ALJ's description of the claimant's activities, however, significantly distorts Allen's actual testimony concerning her activities. Without explaining in detail each of these distortions, it is sufficient to state that after a careful review of Allen's testimony, it is clear that the claimant's ability to function is far from normal. For example, the claimant rarely leaves her home; rarely drives; needs assistance to visit her doctors; and is unable to go out to visit her friends or her fiancee. (Tr. 58–61). Coupled with these items is the fact that before her back injury, Allen enjoyed a variety of vigorous outdoor activities. (Tr. 198). In sum, since her injury, the claimant has led an extremely sedentary life. Consequently, the ALJ's conclusion that the claimant's daily routine contradicts a finding of disabling pain is not supported by substantial evidence. *Compare Lewis v. Califano,* 616 F.2d at 76.

Consequently, upon review of the record, it is clear that the Secretary did not present substantial evidence to rebut the claimant's prima facie case based upon the medical evidence. In addition to this and other problems previously discussed, it is apparent that the ALJ made another significant error which further requires that this case be remanded to the Secretary.

■ In his report, the ALJ concluded that Allen was incapable of returning to her former occupation as a nurse. (Tr. 16). Once the claimant demonstrates that she can no longer perform her old occupation, the burden is on the Secretary to prove the availability of some other kind of gainful employment which the claimant is able to perform. *Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir.1979). In this case, the ALJ relied upon Appendix 2 to 20 C.F.R. Part 404 to demonstrate the existence of other jobs. Although the use of Appendix 2 is appropriate in some circumstances, *see Heckler v. Campbell,* —— U.S. ——, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983), it "may not be fully applicable" where a claimant suffers from non-exertional impairments. 20 C.F.R. Part 404, Appendix 2, § 200.00(e); *see Santise v. Schweiker,* 676 F.2d 925, 934–35 (3d Cir. 1982).

■ In this case, the ALJ found that Allen suffers from significant lower back pain (Tr. 16), a finding which is clearly supported in the record. In fact, the major obstacle that prevents Allen from performing a job is pain, and there is no evidence in the record to support a finding that such pain will not limit the claimant's ability to perform sedentary jobs. Pain, in circumstances such as these, can constitute a non-exertional impairment. *See Donovan v. Schweiker,* C.A. No. 82–566, Slip Op. at 7 (D.Del. May 31, 1983). Consequently, based upon the current record, the Court concludes that the claimant's pain constitutes a non-exertional impairment.

Because the claimant suffers from a non-exertional impairment, the ALJ was incorrect in relying exclusively on the Appendix 2 grid to demonstrate the existence of specific jobs in the economy that the claimant could perform. When the claimant demonstrates significant non-exertional limitations, the Secretary must solicit the testimony of a vocational rehabilitation expert, who must point to specific jobs in the economy the claimant would be able to perform. *Id.* at 9. Consequently, because the current record indicates that the claimant suffers from a significant non-exertional limitation,

it was error for the ALJ not to obtain the testimony of a vocational expert.

## CONCLUSION

Although the ALJ's decision was infirm in several respects, the record does not inexorably lead to a grant of summary judgment for the claimant. *See Kent v. Schweiker,* Slip Op. at 11. First, there is no medical testimony in the record which clearly indicates that the claimant cannot perform any type of work. Second, as was the case in *Kent,* the ALJ was apparently troubled by the prospect that a young, educated woman such as Allen, could be rendered totally disabled by nothing more than a herniated disc. While these considerations do not support the ALJ's finding of non-disability, the Court concludes that it is appropriate for the Secretary to conduct further hearings on this matter. Consequently, this case will be remanded to the Secretary for further proceedings consistent with this Opinion.

An appropriate order will issue.