**Benjamin HARRIS, Plaintiff,**

v.

**Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant.**

Civ. A. No. 89–567 MMS.

United States District Court, D. Delaware.

Aug. 14, 1991.

Gary L. Smith and Douglas A. Shachtman, of Douglas A. Shachtman & Associates, Wilmington, Del. for plaintiff.

William C. Carpenter, Jr., U.S. Atty., and Carolyn T. Greene, Asst. U.S. Atty., Dept. of Justice, Wilmington, Del. (Beverly Dennis, III, Charlotte Hardnett and Hope S. Bugay, Dept. of Health and Human Services, Philadelphia, Pa., of counsel), for defendant.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

This action is brought under section 205(g) of the Social Security Act, as amended (the "Act"), 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services, Louis D. Sullivan (the "Secretary"), which denied plaintiff's application for disability insurance benefits. For reasons which follow, the matter will be remanded to the Secretary.

The plaintiff, Benjamin Harris, was born on November 25, 1945. After completing high school, the plaintiff worked in the National Guard for eight years, where he was trained as a radar technician, radar mechanic, and radar operator. Subsequently, he was employed as a forklift operator for two years and thereafter he obtained employment as a spot welder with the Chrysler Corporation, a position which he held for thirteen years. His responsibilities with Chrysler required him to twist his upper torso while pulling and lifting a welding gun. He was also required to lift parts which weighed 25 to 40 pounds. In late 1981 he injured his back, and he has not worked since that time.

Plaintiff originally filed two previous applications for disability insurance benefits on April 7, 1982 and May 30, 1984, claiming disability arising from the back injury. In both instances, the applications were denied. On May 29, 1987, plaintiff applied for disability benefits for a third time, alleging disability since October 21, 1981. Medical evidence submitted by the plaintiff was evaluated by physicians and disability examiners, who concluded initially and on request for reconsideration, that the plaintiff was not disabled within the meaning of the Act.

After a *de novo* hearing, Administrative Law Judge ("ALJ") Richard A. Kelly denied plaintiff's claim in a decision dated January 30, 1989. The ALJ determined that the plaintiff retained the residual funtional capacity to perform sedentary work, and as a result, the plaintiff was not disabled within the meaning of the Act. The Appeals Council denied plaintiff's request for review on August 22, 1989. The plaintiff's appeal followed, and the United States Magistrate for this court concluded that the decision of the ALJ is supported by substantial evidence. The Magistrate's Report and Recommendation dated May 3, 1991 recommended the defendant's motion for summary judgment be granted and that the plaintiff's summary judgment motion be denied. On May 21, 1991, the plaintiff filed objections to the Magistrate's Report and Recommendation.

Discussion

Disabled persons are provided with benefits by the federal government under the Supplemental Security Income Program if they are unable to "engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be

938

deemed disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Secretary has adopted by regulation a five step, sequential evaluation process to determine if the individual is to receive or continue to receive benefits. The ALJ must determine: (a) whether the person is presently engaged in a substantial gainful activity; (b) if not, whether the claimant has a severe impairment; (c) if the claimant does have a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. § 404, Subpt. P, App. 1; (d) if the impairment does not satisfy one of the criteria, whether the claimant's impairments prevent him from performing his past relevant work; and (e) if the claimant is incapable of performing past relevant work, whether he can perform any other work which exists in the national economy in light of his residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520. While the claimant bears the burden of proof with regard to the first four steps in the analytical framework outlined above, the Secretary has the burden of proving the last step, i.e., that the claimant is capable of performing other work and that such work exists in significant numbers in the national economy. *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir.1984).

The ALJ determined that the plaintiff successfully cleared his first hurdle by demonstrating that he has not worked since 1981. Next, in order to prove a severe impairment, the plaintiff alleged that he suffers from vertobrogenic and somatoform disorders. The ALJ disagreed, finding the evidence submitted by the plaintiff to be insufficient to establish impairments medically equal to those listed in Appendix 1, Subpart P for somatoform or vertobrogenic disorders. However, since sufficient evidence had been adduced to determine

that the plaintiff could not return to his former positions of employment, the ALJ continued the analysis under the fifth step. After reviewing medical and vocational evidence and presenting a hypothetical supposedly based upon the plaintiff's ailments to a vocational specialist, the ALJ concluded that the plaintiff's residual functional capacity is such that he is capable of performing sedentary work and that there are a significant number of positions for such sedentary work available in the national economy. In reaching this determination, the ALJ discounted the credibility of the plaintiff's claims of pain and the evaluations of physicians which indicated that the plaintiff's sensations of pain arise primarily from a psychosomatic cause and secondarily from his back injuries.

The court's review of the Secretary's factual findings is limited. If the Secretary's finding is supported by substantial evidence, the court must uphold the finding. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir.1979). The Third Circuit appellate court has instructed:

[t]his oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence ... or if it really constitutes not evidence but mere conclusion.... The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983) (emphasis in original). *See Brew-*

*ster v. Heckler,* 786 F.2d 581, 584 (3d Cir. 1986).

The plaintiff has objected to the Magistrate's Report and Recommendation, claiming that the ALJ's determination is not supported by substantial evidence. He urges the following grounds of error: (a) the Magistrate improperly refused to consider all medical evidence submitted in support of the plaintiff's alleged vertobrogenic and somatoform disorders; (b) the Magistrate's finding that the plaintiff does not meet the requirements for a somatoform disorder is not supported by substantial evidence; (c) the Magistrate failed to explain why certain medical evidence was accepted and why other evidence was rejected in reaching her conclusions; (d) the vocational testimony regarding alternative employment for the plaintiff failed to meet the standard of substantial evidence; and (e) the Magistrate improperly concluded that the plaintiff's testimony of pain was not credible.

■ The plaintiff's first assignment of error relates to the evidence submitted in support of his alleged vertobrogenic and somatoform disorders. Plaintiff relies partially on evidence dated prior to September 15, 1985. The Magistrate concluded that the ALJ determinations of April 20, 1983 and September 13, 1985 on plaintiff's first two applications are final and, by virtue of

the doctrine of *res judicata,* review of the pre–1985 evidence is barred. The Magistrate concluded that plaintiff's use of pre–1985 evidence to establish his alleged disorders would effectively re-open the 1985 decision.

The court agrees with the Magistrate. This court is obliged to respect the ALJ's prior determinations. 42 U.S.C. § 405(h). A prior judgment may be modified or set aside only in two circumstances: (a) where there has been a change of circumstances sufficient to merit reconsideration of the earlier decisions, or (b) where there is clear error on the face of the initial ruling. *Purter v. Heckler,* 771 F.2d 682, 692 (3d Cir.1985). In the present case, plaintiff has not presented any new evidence to demonstrate a change of circumstances or clear error on the face of the 1983 or 1985 decisions to justify re-opening the ruling on those applications. In this third application, the plaintiff has only resubmitted prior evidence along with post–1985 evidence which relates to more recent symptoms and subjective complaints of pain.

■ The plaintiff's second assignment of error involves the third step in the ALJ's sequential analysis. He argues that the ALJ incorrectly concluded that plaintiff does not have a somatoform disorder as defined by 20 C.F.R. Part 404, Subpart P, App. 1, § 12.07.[1] An applicant must pass

1. 20 C.F.R. Part 404, Subpart P, App. 1, § 12.07 provides:

Somatoform Disorders: Physical symptoms for which there are no demonstrable organic findings or physiological mechanisms.

The required level of severity for these disorders is met when the requirements in both A and B and satisfied.

A. Medically documented by evidence of one of the following:

1. A history of *multiple physical symptoms* of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly; or

2. Persistent nonorganic disturbance of one of the following:

a. vision; or
b. speech; or
c. hearing; or
d. use of a limb; or
e. *movement and its control* (e.g., coordination disturbance, psychogenic seizures, akinesia, dyskinesia; or

f. sensation (e.g. diminished or heightened).

3. Unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury;

B. Resulting in three of the following:

1. Marked restriction of activities in daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

4. *Repeated episodes of deterioration or decompensation* in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behavior).

muster under both Subsection A of § 12.07, which relates to physical limitations, and Subsection B, which mandates a showing of limited functional abilities in social settings, in order to establish a somatoform disorder. The Magistrate found that the ALJ had substantial evidence to conclude that plaintiff could not fulfill the requisite three out of the four functional limitations set forth in Subsection B. The ALJ found that plaintiff performed light housework, cared for himself and his grandchild, attended family gatherings, and had been married within the last two years. He found that the plaintiff could drive short distances; he was visited by his brother three or four times a week, and that his ability to concentrate was "okay."

In light of the evidence adduced, the ALJ analysis of the plaintiff's functional limitations were 1) the plaintiff has a slight limitation of daily living; 2) there are no difficulties in maintaining social functioning; 3) he seldom exhibited deficiencies in concentration or inability to complete tasks in a timely manner; and 4) there was no deterioration in work-like settings causing the individual to withdraw from the setting. After reviewing the record, the court finds there is substantial evidence to support the ALJ's Subsection B analysis. Since the plaintiff has not met his burden with respect to Subsection B criteria, his claim of disability by virtue of a somatoform disorder must fall.

■ The plaintiff's third and fourth assignments of error relate to the fifth step in the sequential analysis. The plaintiff asserts that the ALJ improperly concluded that the plaintiff could engage in sedentary employment. The plaintiff argues neither the ALJ nor the Magistrate considered the opinion of Dr. Pierre R. LeRoy regarding the plaintiff's physical functional capacities, and as a consequence, the vocational testimony regarding sedentary work available for the plaintiff is not sound.

On December 15, 1986, Dr. LeRoy performed a physical capacities evaluation of the plaintiff. He concluded that the plaintiff could sit for no more than four hours within an eight hour work day and that he could perform combined standing or walking for no more than one hour in an eight hour day. Further, Dr. LeRoy observed that the plaintiff must utilize a heating pad and recline intermittently for extended periods throughout the day for relief of pain. At most, the plaintiff could sit for only forty-five minutes at one time before presumably having to recline. *See* Docket Item ("D.I.") 4A at 452. Notwithstanding the foregoing, the ALJ concluded that the plaintiff was able to engage in sedentary work.

Sedentary work is defined in 20 C.F.R. § 404.1567(a):

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involved sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Social Security Ruling 83–10 specifies that for a job to be sedentary, "the periods of standing or walking should generally be no more than about 2 hours of an 8 hour work day and sitting should generally total approximately 6 hours of an 8 hour work day." Once published, Social Security Rulings are binding on the Secretary. 20 C.F.R. § 422.406.

Dr. LeRoy's evaluation of the plaintiff's physical functional limitations indicates that he is unable to meet the minimum requirements for sedentary work as set forth by Social Security Ruling 83–10. "A claimant who is unable to satisfy the minimum requirements for sedentary activity is deemed disabled." *Root v. Heckler*, 618 F.Supp. 76, 81 n. 8 (D.Del.1985).

■ Further, an ALJ may not reject a physician's conclusions unless he first weighs them against other relevant evidence and explains why certain other evidence has been accepted and why other evidence has been rejected. *Kent v. Schweiker*, 710 F.2d 110, 115 n. 5 (3d Cir.

1983). The reports of other physicians do not provide substantial evidence for disregarding Dr. LeRoy's opinion. Rather, other medical opinions support the plaintiff's claim that he cannot partake in alternative work. Dr. Anthony L. Cucuzzella, M.D., and Dr. Italo V. Monteleone, M.D., both opined that vocational rehabilitation is unlikely to yield successful results because of his psychogenetic disorders which limit his functional activities. *See* D.I. 4A at 478 and 494. A psychiatrist, Dr. Howard K. Huxster, further stated that the plaintiff's psychogenic pain disorder precludes him from withstanding the customary work pressures found in a competitive employment environment. D.I. 4A at 481. The court will enter an order remanding this case to the Secretary for further findings and reasoned conclusions based upon all relevant evidence as to whether the plaintiff is able to meet the requirements of Social Security Ruling 83–10 for the performance of sedentary work.

The plaintiff also contests the ALJ's determination that the plaintiff can secure sedentary work in the national economy as a security monitor, a production inspector or a quality control inspector. Plaintiff argues that this determination is in error because (a) the position of security monitor is not listed in the *Dictionary of Occupation Titles*, (4th ed. 1977) and hence can not be regarded as a viable position, and (b) the positions of production inspector or quality control inspector are properly classified as light exertional work rather than sedentary work. Since it is the Secretary's burden to demonstrate positions are available for the plaintiff in the national economy, on remand the Secretary is instructed to make findings with respect to accurately identified positions for sedentary work which the plaintiff could perform in the event that he determines that the plaintiff maintains a residual functional capacity sufficient to engage in sedentary work.

■ The plaintiff's final assignment of error relates to the ALJ's finding that plaintiff's testimony regarding his complaints of pain is not credible. In *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.

1985), the Third Circuit appellate court reiterated its standard regarding subjective complaints of pain. *Ferguson* enumerates the following elements: (a) subjective complaints of pain should be seriously considered, even where not fully confirmed by objective medical evidence; *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981); *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971); (b) subjective pain "may support a claim for disability benefits," *Bittel*, 441 F.2d at 1195, and "may be disabling," *Smith*, 637 F.2d at 972; (c) when such complaints are supported by medical evidence, they should be given great weight, *Taybron v. Harris*, 667 F.2d 412, 415 n. 6 (3d Cir.1981); *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir.1986); *Dobrowolsky v. Califano*, 606 F.2d at 409; and (d) where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence. *Green v. Schweiker*, 749 F.2d 1066, 1070 (3d Cir. 1984); *Smith*, 637 F.2d at 972.

The plaintiff testified at the hearing on December 16, 1988 that he experiences severe pain in the lower back, right hip, and the pain causes weakness in the legs and numbness in the foot and thigh area. Claimant further testified that the pain is made worse by prolonged sitting or standing and by changes in the weather. He described the pain in his leg as being constant. Plaintiff also testified that his daily activities consist of finding ways in which to ease the pain and that he experiences severe muscle spasms on a daily basis. The plaintiff also stated that he is unable to get out of bed approximately two days per week and that the pain interferes with his ability to concentrate. He estimated that he is able to sit for approximately twenty minutes and walk for about fifteen minutes before he suffers a muscle spasm.

The plaintiff's subjective complaints of pain are reflected in the medical reports. As discussed above, Dr. LeRoy has indicated the plaintiff's limitations for sitting and walking. Further, the psychological component of the plaintiff's illness has been described by Dr. Huxster who believes that the plaintiff's psychological dis-

order precludes him from participating in a competitive work environment. *See* D.I. 4A at 479. Drs. Cucuzzella's and Monteleone's findings are consistent with those of Dr. Huxster. D.I. 4A at 478 and 494. Indeed, there is no credible medical evidence to suggest that plaintiff is not suffering from a severe psychological impairment.

The ALJ questioned the plaintiff's credibility as it related to his activities because of a perceived inconsistency between the plaintiff's view of his limitations and the report of Darryl Harris, the plaintiff's brother who had given a statement to a caseworker with the Social Security Administration during a telephone conversation. The ALJ made the following finding:

> At the hearing the claimant testified to a very limited life style. However, a report of contact from Darryl Harris, the claimant's brother, reveals that the claimant's brother sees him frequently around three or four times a week and that the claimant is able to perform light housework, do the dishes, occasional cooking, able to care for himself without any difficulty and is able to drive short distances and help out with the care of his grandchildren.... The claimant's brother has stated that the claimant must alternate with periods of sitting and standing and cannot stay in one position too long and that the claimant participates in family gatherings and goes crabbing and fishing. His brother has not seen the claimant cry because of the pain and has stated that the claimant's memory and ability to concentrate are okay. These statements by a person close to the claimant tend to cast great doubt on the claimant's credibility.

The court is of the opinion that Darryl Harris' contact report does not constitute substantial evidence to disregard the plaintiff's subjective complaints of pain. The ALJ did not include all of Darryl Harris's statements and some comments cited are taken out of context. The ALJ did not consider that Darryl Harris stated that while his brother can drive from time to time, he can only drive for short distances because if he drives too long his feet become numb and he has a hard time using the foot pedals. The ALJ did not consider that statement that plaintiff had to hire people to perform yard work or that he had to rely upon his brothers to install air conditioners in his home. Darryl Harris also explained that plaintiff has used a cane to walk for the last two years and that plaintiff must alternate periods of sitting and standing as he complains of back pain when in one position too long. The ALJ did not consider that Darryl Harris stated that the plaintiff does not typically leave the house and that his physical condition was getting worse with the passage of time.

The ALJ emphasized that the plaintiff participates in family gatherings. However, the contact report does not indicate the frequency of family gatherings attended by the plaintiff or how active the plaintiff is during such gatherings. The contact report does not explain why Darryl Harris visits his brother three or four times each week or the duration of the visits.

At best, the Darryl Harris contact report indicates that the plaintiff undergoes sporadic periods of activity. However, it is well established that sporadic or transitory activity is not a reliable indicator of residual functional capacity. *Root v. Heckler*, 618 F.Supp. at 82. *See also Smith v. Califano*, 637 F.2d 968, 971–72 (3d Cir.1981). Further, the medical reports of Drs. Huxster, Cucuzzella and Monteleone indicate a psychosomatic origin for the plaintiff's pain. Moreover, no medical evidence has been adduced to contradict these findings. As a result, I do not find sufficient evidence to support the ALJ's conclusion that the plaintiff's complaints of pain are not credible. On remand, the Secretary is instructed to credit plaintiff's subjective complaints of pain in determining whether he is capable of performing any other work.

An appropriate order will issue.